UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CR-0138-010-CVE |
| ) | |
| OSCAR MONTOYA, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is defendant's Motion to Suppress Statements (Dkt. # 284). Defendant asks the Court to suppress statements made by defendant during a traffic stop, because the police officer failed to give defendant a Miranda warning before questioning defendant. Defendant does not request an evidentiary hearing and relies on a transcript of a co-defendant's suppression hearing as the factual basis for his motion.[1] Dkt. # 284, at 1. The government responds that routine questions asked by the police officer during a traffic stop do not constitute custodial interrogation, and there was no need to give defendant a Miranda warning. Dkt. # 287, at 2-3.

On October 5, 2009, Tulsa Police Department (TPD) Officer Anthony First was on patrol and was advised to be on the lookout for a white Toyota Scion. Dkt. # 233. First observed the white Toyota Scion and followed the vehicle onto Interstate 244 (I-244). Id. at 2. First saw the vehicle drift about halfway into the middle lane of I-244 without signaling a lane change and initiated a traffic stop based on his observation of an illegal lane change. Id. First acknowledged that he was

---

[1]  The Court has already heard the testimony of the relevant witnesses and made findings of fact when ruling on Erlin Ayala's motion to suppress. See Dkt. # 233. The Court will not revisit those factual findings, but will provide some factual background relevant to defendant's motion to suppress statements.

following the vehicle and looking for a reason to initiate a traffic stop, but he was clear that he did observe a traffic violation. Id. at 2. Ayala was driving the vehicle and Oscar Montoya was sitting in the front passenger seat. First asked Ayala to come to First's patrol car while First ran a record check on the vehicle. Ayala returned to the patrol car with First, and Montoya remained in the vehicle.

First separately asked Ayala and Montoya about their travels plans and received conflicting stories. Ayala stated that he was looking for work as a house painter in Tulsa, and Montoya claimed that they were visiting a friend in Tulsa. Id. at 3. However, Montoya did not know the name of the friend or exactly where the friend lived. Id. Ayala and Montoya also provided conflicting statements as to the owner of the vehicle. Ayala stated that the vehicle belonged to "Melissa," Montoya told First that the vehicle belonged to "Isabero." Based on a combination of factors, First decided to extend the traffic stop and called for a canine unit to conduct a sniff of the vehicle.[2] The canine unit arrived and Max, a certified drug-sniffing dog, alerted to the presence of drugs in the vehicle. Id. at 4. Police searched the vehicle and found, inter alia, a crystalline substance later identified as methamphetamine.

Defendant argues that this was not a routine traffic stop because it was initiated with the intention of finding a reason to search the white Toyota Scion, and any statements made by defendant should be treated as if there made during a custodial interrogation. Dkt. # 284, at 3-5. He asks the Court to exclude any statements he made to First, because First failed to give defendant

---

[2] At some point during the traffic stop, a backup officer, TPD Officer Jake (or Jacob) Johnson, arrived at the scene. Dkt. # 282, at 38-39. However, there is no evidence that Johnson interacted with defendant or even that defendant was aware of Johnson's presence during First's questioning of Montoya.

a warning as required by Miranda v. Arizona, 384 U.S. 436 (1966).  However, Miranda is generally not implicated by a routine traffic stop, and a Miranda warning is not usually required in a valid Terry stop.  United States v. Eckhart, 569 F.3d 1253, 1275 (10th Cir. 2009).  An officer conducting a traffic stop may request a driver's license, vehicle registration, run a computer check, and issue a citation.  See United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001).  An officer may also "ask questions about the motorist's travel plans and authority to operate the vehicle," in addition to obtaining the relevant documentation, without exceeding the scope of an investigative detention.  United States v. Alcaraz-Arellano, 441 F.3d 1252, 1258 (10th Cir. 2006).  Such questioning does not violate the Fourth Amendment as long as the questioning does not prolong the traffic stop.  United States v. Villa, 589 F.3d 1334, 1339 (10th Cir. 2009); United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005).

Defendant acknowledges that First did not prolong the traffic stop beyond its initial purpose before asking defendant about the ownership of the vehicle or his travel plans.  However, he argues that First initiated the traffic stop as pretext to search the vehicle and the traffic stop escalated into an encounter similar to a formal arrest.  The subjective intentions of the police are irrelevant under the Fourth Amendment, and it does not matter if police had another purpose for initiating a traffic stop.  Whren v. United States, 517 U.S. 806, 813 (1996); Botera-Ospina, 71 F.3d at 787.  First was asked to initiate a traffic stop if he observed a traffic violation and he was aware that a canine unit was on call, and there is no dispute that First had a purpose other than simply enforcing the traffic laws when he commenced the traffic stop.  The law is clear that First's subjective intentions are irrelevant when considering the validity of the traffic stop, and defendant has not cited any authority suggesting that this is a relevant factor in determining if he was in custody for purposes of Miranda.

The Court will consider defendant's argument that he was in custody based on the totality of the circumstances, but First's subjective intentions for initiating the traffic stop are irrelevant to this inquiry.

A person is "in custody" under Miranda if he is "deprived of his freedom of action in any significant way" or his "freedom of action is curtailed to a 'degree associated with formal arrest.'" United States v. Chee, 415 F.3d 1106, 1112 (10th Cir. 2008) (citations omitted). This is a fact-intensive inquiry that is based on the totality of the circumstances. United States v. Benally, 146 F.3d 1232 , 1239 (10th Cir. 1998). The Tenth Circuit has provided three non-exclusive factors that district courts should apply to determine if a person is in custody under Miranda:

> First, we consider "the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will." Second, we look at "the nature of questioning," where "prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave." Finally, . . . we check whether police dominate the encounter . . . ."

United States v. Jones, 523 F.3d 1235, 1240 (10th Cir. 2008). When considering the third factor, specific types of police conduct may suggest that an encounter has become "police dominated:"

> [s]eparation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.

Id.

Defendant argues that several factors support his assertion that he was in custody for the entire duration of the traffic stop. He claims that the traffic stop was an "officer dominated" environment due to the presence of two police officers, and First engaged in conduct in an attempt to show that he controlled the vehicle and defendant's liberty. Dkt. # 284, at 4. He argues that

4

First's failure to give a Miranda warning suggested to defendant that he could not refuse to answer First's questions. Id. at 5.

Considering the facts established at the suppression hearing and defendant's arguments, the Court finds that defendant was not in custody during the traffic stop and he was not entitled to a Miranda warning before First asked routine questions about defendant's travel plans and the ownership of the vehicle. First did not advise defendant that he was free to leave or that he could refrain from answering questions. However, First's questions were not incriminating in nature and the questioning was not prolonged. First asked about the ownership of the vehicle and this is clearly within the scope of a traffic stop. Although First found that Ayala and defendant gave conflicting answers, there was nothing inherently accusatory about First's question and it was relevant to completion of a traffic citation. The Tenth Circuit has also held that questions about travel plans are permissible, as long as such questioning does not extend the traffic stop. Alcaraz-Arellano, 441 F.3d at 1258. Defendant does not dispute that First questioned defendant about his travel plans within the scope of the traffic stop, and there was nothing improper about First's questions concerning Ayala's and defendant's travel plans. Defendant argues that two police officers were present and the traffic stop became an "officer dominated" environment. First testified that Johnson arrived on the scene as a "backing" officer, but there is no indication that Johnson interacted with defendant or even that defendant was aware of Johnson's presence. Dkt. # 282, at 38-39. The presence of a backing officer does not show that the traffic stop was an officer dominated environment. Defendant argues that First acted as if he "controlled the vehicle . . and showed [d]efendant that he could do as he pleased with the vehicle and its contents--including [d]efendant," because First opened the driver side door to look for the Vehicle Identification Number (VIN) and removed an identification

5

card from the back seat. Dkt. # 284, at 4. The Court found that First did open the driver side door to check the vehicle's VIN, but checking the VIN is a routine part of a traffic stop and this does not show that First was attempting to control the vehicle or defendant. Defendant also misstates First's testimony concerning the identification card on the floorboard. First testified that he observed a Nebraska identification card for "Carlos Lopez," but there was no evidence presented at the suppression hearing the First removed the identification card from the vehicle. Dkt. # 233, at 3. Considering the totality of the circumstances, the traffic stop did not transform into a formal arrest, and defendant was not entitled to a Miranda before answering routine questions about the ownership of the vehicle or his travel plans. Therefore, defendant's motion to suppress should be denied.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress Statements (Dkt. # 284) is **denied**.

**DATED** this 23rd day of August, 2010.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE